# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NEW GEORGIA PROJECT, INC. and NEW GEORGIA PROJECT ACTION FUND, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER M. CARR, in his official capacity as the Attorney General of Georgia; JAMES D. KREYENBUHL, in his official capacity as the Chair of the Georgia Government Transparency and Campaign Finance Commission; ROBERT A. WATTS, in his official capacity as the Vice Chair of the Georgia Government Transparency and Campaign Finance Commission; DARRYL HICKS, in his official capacity as a member of the Georgia Government Transparency and Campaign Finance Commission; DAVID BURGE, in his official capacity as a member of the Georgia Government Transparency and Campaign Finance Commission; RICK THOMPSON, in his official capacity as a member of the Georgia Government Transparency and Campaign Finance Commission; and DAVID EMADI, in his official capacity as the Executive Secretary of the Georgia Government Transparency and Campaign Finance Commission, <br><br> Defendants. | CIVIL ACTION FILE NO. _____ |

## VERIFIED COMPLAINT

1. Plaintiffs bring this facial and as-applied challenge to the Georgia Government Transparency and Campaign Finance Act (the "Act"), O.C.G.A. §§ 21-5-1 to -76, on the ground that its definitions of "campaign committee" and "independent committee" violate the First and Fourteenth Amendments to the U.S. Constitution.

2. Campaign finance laws that compel disclosure by organizations that qualify as political committees "can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (per curiam).

3. The Supreme Court has thus "held that only entities 'under the control of a candidate or *the* major purpose of which is the nomination or election of a candidate' can be so designated." *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 287 (4th Cir. 2008) (quoting *Buckley*, 424 U.S. at 79).

4. Notwithstanding these well-established limitations, on their face, the Act's definitions of "campaign committee" and "independent committee" do not require an organization to have the major purpose of nominating or electing candidates. O.C.G.A. §§ 21-5-3(2), (15).

5. Even though Plaintiffs' major purpose is nonpartisan voter engagement, not electoral political activity—the Georgia Government Transparency and Campaign Finance Commission (the "Commission") has characterized Plaintiffs as political committees under its overbroad definitions of "campaign committee" and "independent committee" and commenced an investigation of Plaintiffs' purported violations of the Act.

6. Permitting the Commission's investigation of Plaintiffs and sanctioning the Act's overbroad definitions of "campaign committee" and "independent committee" would have sweeping consequences, chilling core First Amendment activity for nonprofit organizations by subjecting them to burdensome committee registration and disclosure rules—regardless of their primary purpose.

7. Accordingly, Plaintiffs seek an order (i) declaring that the Act's definitions of "campaign committee" and "independent committee" under O.C.G.A. § 21-5-3(2) and (15), respectively, are facially overbroad and unconstitutional—or, alternatively, overbroad and unconstitutional as applied to Plaintiffs—in violation of the First and Fourteenth Amendments to the U.S. Constitution; (ii) enjoining Defendants from relying on, enforcing, or prosecuting violations of the Act, to the extent that it incorporates the unconstitutional definitions of "campaign committee"

and "independent committee," against Plaintiffs and others similarly situated; and (iii) providing any and such additional relief as is appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343(a)(3).

9. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper under 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim occurred" in this district.

## PARTIES

11. Plaintiff New Georgia Project, Inc. ("NGP") is a nonprofit corporation that was incorporated in Delaware. NGP is headquartered in Georgia and registered with the Secretary of State of Georgia to conduct business as a foreign nonprofit corporation.

12. Plaintiff New Georgia Project Action Fund, Inc. ("NGPAF") is a nonprofit corporation that was incorporated in Delaware. NGPAF is headquartered in Georgia and registered with the Secretary of State of Georgia to conduct business as a foreign nonprofit corporation.

13. Defendant Christopher M. Carr is the Attorney General of Georgia and is named in his official capacity. As Attorney General, he "shall, upon complaint by the [C]ommission, or may, upon [his] own initiative . . . , bring an action in the superior court in the name of the [C]ommission for a temporary restraining order or other injunctive relief or for civil penalties for a violation of any provision of [the Act]." O.C.G.A. § 21-5-6(b)(14)(C)(iii).

14. Defendant James D. Kreyenbuhl is the Chair of the Commission; Defendant Robert A. Watts is the Vice Chair of the Commission; and Defendants Darryl Hicks, David Burge, and Rick Thompson are members of the Commission. They are each named in their official capacity. As members of the Commission, their duties include, among other things, "mak[ing] investigations . . . with respect to the statements and reports filed under [the Act] and with respect to alleged failure to file any statements or reports required under [the Act]"; "issu[ing] orders, after the completion of appropriate proceedings, directing compliance with [the Act] or prohibiting the actual or threatened commission of any conduct constituting a violation"; and "carry[ing] out the procedures, duties, and obligations relative to the commission set forth in [the Act]." *Id.* §§ 21-5-6(b)(9), (14), (18).

15. Defendant David Emadi is the Executive Secretary of the Commission and is named in his official capacity. He is "employ[ed] . . . to carry out the powers delegated to the [C]ommission by [the Act]." *Id.* § 21-5-6(a)(4).

## LEGAL BACKGROUND

16. The First Amendment—which is incorporated to the states through the Fourteenth Amendment, *see, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925)—"affords the broadest protection to [] political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'" *Buckley*, 424 U.S. at 14 (second alteration in original) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). Because campaign finance "limitations operate in an area of the most fundamental First Amendment activities," such regulations are subjected to heightened scrutiny. *Id.* at 14–16; *see also FEC v. Machinists Non-Partisan Pol. League*, 655 F.2d 380, 387 (D.C. Cir. 1981) (extension of campaign finance commission's "investigative authority warrants extra-careful scrutiny from the court because the activities which [such commissions] normally investigate[] differ in terms of their constitutional significance from those which are of concern to other [] administrative agencies").

17. In particular, the U.S. Supreme Court has held that "compelled disclosure" required by organizations that qualify as political committees "can

seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley*, 424 U.S. at 64. Indeed, just last year, the Court observed that compelled disclosures of information from nonprofit organizations—including "donors' names and the total contributions they have made"—"can chill association." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2386, 2388 (2021). Such disclosures must therefore "survive exacting scrutiny," *Buckley*, 424 U.S. at 64, which requires a "'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest," *Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010) (quoting *Buckley*, 424 U.S. at 64, 66).

18.  "Since designation as a political committee often entails a significant regulatory burden . . . the [Supreme] Court held that only entities 'under the control of a candidate or *the* major purpose of which is the nomination or election of a candidate' can be so designated." *N.C. Right to Life*, 525 F.3d at 287 (quoting *Buckley*, 424 U.S. at 79); *see also, e.g.*, *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 676 (10th Cir. 2010) ("In *Buckley*, the Court held that the reporting and disclosure requirements . . . survived 'exacting scrutiny' so long as they were construed to reach only that speech which is 'unambiguously campaigned related'" (quoting *Buckley*, 424 U.S. at 81)); *Nat'l Org. for Marriage, Inc. v. Roberts*, No. 1:10cv192-SPM/GRJ, 2011 WL 13176734, at *4 (N.D. Fla. Aug. 8, 2011)

(explaining that "[t]he major purpose requirement [] applies when regulations are triggered by an organization's status as a political committee"), *aff'd sub nom. Nat'l Org. for Marriage, Inc. v. Sec'y, State of Fla.*, 477 F. App'x 584 (11th Cir. 2012) (per curiam).

19. Courts have routinely "adopted *Buckley*'s '*the* major purpose' test in some form, highlighting that regulation as a political committee is only proper if an organization primarily engages in election-related speech." *N.C. Right to Life*, 525 F.3d at 288 (collecting cases); *see also, e.g.*, *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 584 (8th Cir. 2013) ("This 'so-called major-purpose test . . . limits the reach of the statutory triggers . . . for [political committee] status.'" (first and second alterations in original) (quoting *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 872 (8th Cir. 2012) (en banc))); *N.M. Youth Organized*, 611 F.3d at 678 (applying test and concluding that "attempts to classify [organization] as a 'political committee'" based solely on spending trigger were "constitutionally infirm").

## FACTUAL BACKGROUND

### Plaintiffs' Activities

20. NGP is exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code.

21. NGP's major purpose is not the nomination or election of candidates, but rather voter registration and civic engagement. Its mission "is to build power with and increase the civic participation of the New Georgia Majority—Black, Latinx, AAPI, and young Georgians—and other historically marginalized communities through nonpartisan voter registration, organizing, and advocacy on the issues important to [its] communities."

22. NGPAF is exempt from federal income taxation under section 501(c)(4) of the Internal Revenue Code.

23. NGPAF's major purpose is not the nomination or election of candidates, but rather engagement in issue advocacy that increases the civic participation of underrepresented and underserved communities of color in Georgia.

24. Both NGP and NGPAF are regulated by the IRS and file annual tax returns to disclose their donations and expenses. *See* 26 U.S.C. § 6033; 26 C.F.R. § 1.6033-2(a)(2). The public versions of their tax returns do not reveal the identities of their donors. *See* 26 U.S.C. § 6104(b), (d)(3)(A).

**The Commission's Responsibilities**

25. The Act grants and defines the Commission's jurisdiction. The Commission's role is twofold: It regulates campaigns for and against candidates and

issues on the ballot in Georgia, O.C.G.A. §§ 21-5-30 to -43, and sets ethics guidelines for state public officials, *id.* §§ 21-5-50 to -51, §§ 21-5-70 to -76.

26. Relevant here, the Commission regulates "campaign committees" and "independent committees."

27. On their face, the Act's definitions of "campaign committee" and "independent committee" do not require an organization to have the major purpose of nominating or electing candidates. *See id.* §§ 21-5-3(2), (15).

28. A "campaign committee" is defined as any organization "which accepts contributions or makes expenditures designed to" either "bring about the nomination or election of an individual to any elected office" or "bring about the approval or rejection by the voters of any proposed constitutional amendment, a state-wide referendum, or a proposed question which is to appear on the ballot in this state or in a county or a municipal election in this state." *Id.* § 21-5-3(2).

29. A campaign committee that accepts contributions or makes expenditures is required to register with the Commission. *Id.* § 21-5-34(2)(A).

30. An "independent committee" is defined as any organization "which receives donations during a calendar year from persons who are members or supporters of the committee and which expends such funds either for the purpose of

affecting the outcome of an election for any elected office or to advocate the election or defeat of any particular candidate." *Id.* § 21-5-3(15).

31. Any independent committee that accepts contributions or makes expenditures for the purpose of affecting the outcome of an election or advocates the election or defeat of any candidate must register with the Commission prior to accepting contributions or making expenditures. *Id.* § 21-5-34(f)(1).

32. Campaign committees and independent committees are required to open bank accounts. *Id.* § 21-5-30(c). They must also appoint treasurers and chairpersons. *Id.* § 21-5-30(b).

33. Reports filed by campaign committees and independent committees must disclose the following information:

- "*any* contribution of more than $100.00," including the amount, date of receipt, election for which the contribution was accepted and allocated, name and mailing address of the contributor, and, if an individual, the individual's occupation and name of employer;

- "any expenditure of more than $100.00," including the amount, date, general purpose of the expenditure, name and mailing address of the recipient, and, if an individual, the recipient's occupation and name of employer;

- details about loans and extensions of credit to the committee;

11

- "[t]otal contributions received and total expenditures";

- "[t]he corporate, labor union, or other affiliation of any political action committee or independent committee making a contribution of more than $100.00";

- information about investments made with committee funds; and

- total debt owed by the committee on the last day of the reporting period.

*Id.* § 21-5-34(b)(1) (emphases added).

### The Commission's Investigation and Proceedings

34. In September 2019, the Commission's staff filed identical complaints against Plaintiffs, alleging that they failed to register and report as independent committees with respect to Georgia's 2018 statewide election and as campaign committees with respect to a 2019 municipal election.

35. Plaintiffs responded to the complaints and requested that the Commission immediately vote to dismiss, in part because the complaints did not allege that either Plaintiffs' major purpose is the nomination or election of candidates.

36. On June 17, 2022, the Commission filed a single amended complaint against Plaintiffs that essentially made the same allegations as the September 2019 complaints. Plaintiffs again requested that the Commission immediately vote to dismiss.

37. On August 1, 2022, the Commission denied Plaintiffs' motion to dismiss and voted to find reasonable grounds that Plaintiffs violated the law by failing to register and report as committees.

## CAUSES OF ACTION

### COUNT I:
### Violation of the First and Fourteenth Amendments to the U.S. Constitution

38. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

39. In order to avoid unconstitutional burdens on protected political expression, the U.S. Supreme Court has limited the universe of organizations that may be characterized and regulated as political committees only to those "that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Buckley*, 424 U.S. at 79.

40. The Act's definitions of "campaign committee" and "independent committee," O.C.G.A. § 21-5-3(2), (15), are therefore facially overbroad and unconstitutional because they purport to regulate organizations engaging in issue advocacy and other protected activity beyond the limited scope of electoral political activity defined by *Buckley* and its progeny.

41. Alternatively, the Act's definitions of "campaign committee" and "independent committee" are unconstitutional as applied to Plaintiffs because their

major purposes are not electoral political activity. As a section 501(c)(3) nonprofit organization, NGP does not engage in *any* electoral political activity, let alone as its major purpose. While NGPAF might engage in some electoral political activity, it is not its major purpose.

42. The Act's registration, reporting, disclosure, and other requirements, as applied to organizations like Plaintiffs through the overbroad definitions of "campaign committee" and "independent committee," exceed the regulatory scope defined by the Supreme Court and thus violate the First Amendment as incorporated to the states through the Fourteenth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A. Declare that the definitions of "campaign committee" and "independent committee" under the Georgia Government Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1 to -76, are facially overbroad and unconstitutional in violation of the First and Fourteenth Amendments to the U.S. Constitution;

B. Alternatively, declare that the definitions of "campaign committee" and "independent committee" under the Georgia Government Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1 to -76, are overbroad and

unconstitutional as applied to Plaintiffs in violation of the First and Fourteenth Amendments to the U.S. Constitution;

C. Permanently enjoin Defendants from relying on, enforcing, or prosecuting violations of the Georgia Government Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1 to -76, to the extent that it incorporates the unconstitutional definitions of "campaign committee" and "independent committee," against Plaintiffs and others similarly situated; and

D. Grant such other or further relief the Court deems appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and reasonable costs.

Dated: August 31, 2022                              Respectfully submitted,

By */s/ Bryan L. Sells*
Bryan L. Sells                                      Aria C. Branch*
Attorney Bar No. 635562                             David R. Fox
**THE LAW OFFICE OF BRYAN**                         **ELIAS LAW GROUP LLP**
**L. SELLS, LLC**                                   10 G Street NE, Suite 600
P.O. Box 5493                                       Washington, D.C. 20002
Atlanta, Georgia 31107                              Telephone: (202) 968-4490
Telephone: (404) 480-4212                           Email:  abranch@elias.law
Email: bryan@bryansellslaw.com                              dfox@elias.law

                                                    *Counsel for Plaintiffs*

                                                    **Pro hac vice* application forthcoming

15

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual statements contained in the Complaint are true and correct to the best of my knowledge and belief.

Dated: August 31, 2022

*Aklima Khondoker*
Aklima Khondoker